UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

WILNEITA SMITH,                                          Case No. 20-
                                                        Hon.
                        Plaintiff,

v.

MATTHEW CALL, AMY SCHAUMBURGER,
And SAMARITAS, a Michigan Nonprofit Corporation
d/b/a Samaritas House Heartline,

                        Defendants.
_____/
ERIC STEMPIEN (P58703)
STEMPIEN LAW, PLLC
Attorneys for Plaintiffs
38701 Seven Mile Road, Suite 130
Livonia, MI 48152
(734)744-7002
eric@stempien.com
_____/


## COMPLAINT AND JURY DEMAND

Plaintiff, Wilneita Smith, by and through her attorneys, Stempien Law, PLLC,

hereby complains against Matthew Call, Amy Schaumberger, and Samaritas, and in

support thereof states:

1. Plaintiff Wilneita Smith ("Plaintiff") is a resident of Detroit, Wayne County

   Michigan.

1

2. Defendant Matthew Call ("Call") is a Contract Oversight Specialist with the Federal Bureau of Prisons ("FBOP") whose primary place of employment is in the State of Michigan.

3. Defendant Amy Schaumburger ("Schaumburger") is a Facility Director with Samaritas whose primary place of employment is in the City of Detroit, Wayne County, Michigan.

4. Defendant Samaritas is a domestic nonprofit corporation with its principal place of business in Detroit, Michigan, which operates under the assumed name Samaritas House Heartline.

5. Jurisdiction is vested upon this Court for Plaintiff's constitutional claims pursuant to 28 U.S.C. § 1343, and 28 U.S.C. § 1331. Venue lies in the Eastern District of Michigan.

6. This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. At all times pertinent hereto, Defendants acted under the color of the law, meaning under the color of statutes, codes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or federal law.

8. The events giving rise to this cause occurred in the Eastern District of Michigan.

## COMMON ALLEGATIONS

9. Plaintiff was released from prison in October 2019.

10. From the prison, Plaintiff was released to Samaritas' halfway house located in the City of Detroit to assist her transition from prison.

11. In late November of 2019, one of Samaritas' staff members, RJ Johnson ("Johnson"), sexually harassed Plaintiff while she was in Samaritas' computer room.

12. Johnson requested Plaintiff dance for him, which she refused. Johnson then asked Plaintiff if she liked to "sucking". He told Plaintiff that he had something for her to suck on and said he knew she had not had sex in while. Plaintiff told him to stop disrespecting her and left the room.

13. After Plaintiff left the room, another resident at Samaritas saw that she was visibly upset. Plaintiff explained what had occurred, to which the woman replied, "He is a pervert.  I am going to report him when I get out."

14. In late December, Plaintiff encountered another event with Johnson while she was a resident at Samaritas. Johnson blocked her from coming through a doorway and said, "Do you know who I am?  Look at my badge.  Be nicer to me, and I can help you."

15. Again, in late January 2019, Plaintiff encountered another event with Johnson, who came to Plaintiff's house to do a home check. Normally, Johnson would

have Plaintiff open the front door and wave during a home check, but this time, Johnson banged on her door and attempted to barge into the home.

16. When Plaintiff told Samaritas' Case Manager about the incidents, she said, "I will pass it on."

17. In early February 2020, following an investigation of Samaritas under the Prison Rape Elimination Act ("PREA"), Johnson was discharged from his position at Samaritas.

18. On March 3, 2020, Schaumburger told Plaintiff she had to come to Samaritas to be issued a GPS tether.

19. As a condition of the GPS tether, Plaintiff had to sign a contract that said she could not enter the "Red Zone," but no one was able to explain to her what the "Red Zone" was. Therefore, before signing the contract, Plaintiff wrote on the contract that she did not know what the "Red Zone" was and that she disagreed with it.

20. On the same day she received the GPS tether, Plaintiff received a phone call from Samaritas telling her that Schaumburger was ending Plaintiff's home confinement.

21. That same day, Plaintiff contacted Call to ask why Samaritas was ending her home confinement.

22. Call responded that the FBOP and Samaritas were ending Plaintiff's home confinement because she had previously discussed suing Samaritas. Call then promptly hung up on Plaintiff. Plaintiff called Call back. In the follow-up telephone conversations, Call now claimed that her home confinement was ending because of the statement she had written on the GPS contract.

23. Plaintiff returned to Samaritas to speak with Schaumburger and Mattie Peoples, the Facility Supervisor. Schaumburger told Plaintiff that she [Schaumburger] was "sick and tired" of hearing that Plaintiff was going to sue Samaritas. Schaumburger also stated that she knew that Plaintiff had been talking to an attorney. Schaumburger then threatened Plaintiff, saying that she could put Plaintiff in a worse place.

24. Schaumburger then called Call, who, in a contradictory statement from what he claimed earlier, stated Plaintiff's home confinement was ending because she was not supposed to be a caregiver. Plaintiff, however, was initially granted home confinement to provide care for an ailing relative.

25. Schaumburger, later that same day, said that she will help Plaintiff out if Plaintiff does not write a complaint or give Samaritas any problems, meaning that if Plaintiff does not pursue a sexual harassment claim against Samaritas, then there would be no punishment.

26. On March 4, 2020, Plaintiff sent an email to her Case Manager with FBOP to inform the FBOP Case Manager that she was being threatened.

27. On March 4, 2020, Plaintiff's daughter called Call's office and left a voicemail, saying that Plaintiff was being threatened.

28. On March 5, 2020, Plaintiff told her case manager at Samaritas about the threats that Schaumburger made to Plaintiff.

29. On March 6, 2020, Plaintiff visited Samaritas and was told that U.S. Marshals had been there looking for Plaintiff.  Plaintiff was also told Schaumburger was talking about Plaintiff all day.

30. On Saturday, March 7, 2020, Plaintiff was told again that Schaumburger was discussing Plaintiff all day and that the U.S. Marshals were coming to get her on Monday.

31. On March 9, 2020, Plaintiff received a phone call from Samaritas telling her to come to the facility.

32. When Plaintiff arrived, Plaintiff was told she was going to the Bay County Jail and that Plaintiff had called Call after Schaumburger told her not to call him.

33. On March 10, 2020, Plaintiff was taken by EMS to the hospital for high blood pressure.

34. On March 11, 2020, Plaintiff was taken to Bay County Jail.

35. On March 26, 2020, Plaintiff's daughter called Call and asked why Plaintiff was taken to jail. Call said Plaintiff was part of an investigation and could not go back to Samaritas.

36. In contradictory statements, Plaintiff was also told during her time at the Bay County Jail that she was in because she had refused the GPS tether, which she did not refuse.

37. On March 30, 2020, Plaintiff had a conference call with a FBOP agent, and he asked her about sexual harassment at Samaritas.

38. Plaintiff was confined at Bay County Jail until April 3, 2020.

## COUNT I
### *BIVENS* ACTION
### FOURTH AMENDMENT OF THE U.S. CONSTITUTION
### UNCONSTITUTIONAL SEIZURE AGAINST CALL

39. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

40. The Fourth Amendment of the United States Constitution provides that each person has the right to be secure in his or her person, house, paper, and effects, against unreasonable searches and seizures.

41. At all relevant times hereto, Call was acting under the color of the law.

42. By committing the above-described acts, Call violated Plaintiff's rights under the Fourth Amendment of the Constitution.

7

43. The conduct of Call violated clearly established constitutional or other rights of which Call knew, or of which a reasonable public official should have known.

44. Plaintiff has no effective administrative mechanism or other remedy at law by which to seek the proper measure of damages for these constitutional wrongs.

45. As a result of Call's conduct, Plaintiff is entitled to actual and compensatory damages in an amount to be determined at trial, as well as punitive or exemplary damages.

### COUNT II
### *BIVENS* ACTION
### FIFTH AMENDMENT OF THE U.S. CONSTITUTION
### VIOLATION OF DUE PROCESS AGAINST CALL

46. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

47. The Fifth Amendment to the United States Constitution requires that no person shall be deprived of life, liberty, or property without due process of the law.

48. At all relevant times hereto, Call was acting under the color of the law.

49. By committing the above-described acts, Call violated Plaintiff's rights under the substantive due process, procedural due process and/or equal protection aspects of the Fifth Amendment of the United State Constitution.

8

50. The conduct of Call violated clearly established constitutional or other rights of which Call knew, or of which a reasonable public official should have known.

51. Plaintiff has no effective administrative mechanism or other remedy at law by which to seek the proper measure of damages for these constitutional wrongs.

52. As a direct and proximate result of Call's conduct, Plaintiff is entitled to actual and compensatory damages in an amount to be determined at trial, as well as punitive or exemplary damages.

## COUNT III
## VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT AGAINST SCHAUMBURGER AND SAMARITAS

53. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

54. At all material times, Samaritas was a place of public service, covered by and within the meaning of the Michigan Elliot-Larsen Civil Rights Act, MCL 32.2101 et seq.

55. At all material times, Schaumburger was employed with Samaritas.

56. Plaintiff was sexually harassed by Samaritas' agents and employees throughout her stay at Samaritas' halfway house.

9

57. This sexual harassment was included, but not limited to, unwelcome comments and conduct of an offensive and sexual nature directed at Plaintiff and the creation of a hostile environment.

58. The actions of Samaritas and its agent, Schaumburger, as well as other agents, representatives, and employees were intentional.

59. The conduct of Samaritas' agents and employees, including Shaumburger, in sexually harassing Plaintiff constitutes sexual discrimination in violation of MCL 32.2101 et seq.

60. As a direct and proximate result of Samaritas' and Schaumbuger's conduct, Plaintiff is entitled to actual and compensatory damages in an amount to be determined at trial, as well as punitive or exemplary damages.

**COUNT IV**
**RETALIATION IN VIOLATION OF ELLIOT-LARSEN ACT**
**AGAINST SCHAUMBURGER AND SAMARITAS**

61. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

62. Plaintiff's intention to file a sexual harassment claim against Samaritas constitutes activity protected under the Michigan Elliot-Larsen Civil Rights Act, MCL 37.2101 et seq.

10

63. Samaritas and its agents, including Schaumburger, have retaliated against Plaintiff for opposing violations of the Elliot-Larsen Civil Rights Act in violation of the act.

64. As a direct and proximate result of Samaritas' and Schaumberger's conduct, Plaintiff is entitled to actual and compensatory damages in an amount to be determined at trial, as well as punitive or exemplary damages.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury in this matter.

STEMPIEN LAW, PLLC


*/s/ Eric Stempien*
By: Eric Stempien (P58703)
Attorney for Plaintiffs

Dated: October 29, 2020

11